**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMIBA**

---

Jerry Heroth, Sr.                                      :
Individually and as Personal Representative :
of Jerry Heroth, Jr. (deceased)              :
Kathye Reiss                                          :
Kristin Heroth                                        :
Jonathan Heroth                                       :
Jessica Heroth                                        :
1005 Chablis Drive                                    :
Harker Heights, TX  76548-8102                :
                                                      :
Deborah Carpenter                                     :
individually and as surviving spouse          :
of James Carpenter II (deceased)              :
Shirley Moore                                         :
Jennifer Carpenter                                    :
Brittany Carpenter                                    :
Jamie Russell                                         :
Brian Washburn                                        :
20957 Oxford Street                                   :
Carthage, NY  13619                                   :
                                                      :
Billy Allen Russell, executor of the Estate of:
James Carpenter II                                    :
28482 Robin Lane                                      :
Evans Mills, NY  13637                                :
                                                      :
Mary Knox, as parent and                      :
next friend of                                        :
Quentin Knox, a minor                                 :
(son of Quincy Knox, deceased)                :
910 Vernon Drive                                      :
Copperas Cove, TX  76522                      :
                                                      :
Rafael Maldonado and                                  :
Mayra Cintron-Maldonado                       :
Puerto Nuevo                                          :
1205 Calle Cameguey                                   :
San Juan, PR 00920                                    :
                                                      :
Allen Ceruti                                          :
114 Vivian Drive                                      :
Clarksville, TN 37042                                 :
                                                      :

Alford, James                           :
and Katie Alford                        :
2210 Eldorado Drive                     :
Killeen, TX 76543                       :
                                        :
Stanley Shider                          :
and Beverly Shider                      :
3216 Ross Road                          :
Belton, TX  76513                       :
                                        :
Erick Nelson                            :
2502 174 St. East                       :
Tacoma, WA 98445                        :
                                        :
Kenneth Hunley                          :
and Ruby Hunley                         :
811 N.W. 58th Street                    :
Lawton, OK  73505                       :
                                        :
Eric Garza                              :
and Mi Chong Garza                      :
3328 Lynn Ave.                          :
Number 134                              :
Killeen, TX  76543                      :
                                        :
Terry Young                             :
Mannheimer Str. #77                     :
Schwetzingen 68723, Germany             :
                                        :
Donald Viner                            :
4810 S. Joplin Ave.                     :
Tulsa, OK 74135                         :
                                        :
Felix Acevedo and                       :
Claire Acevedo                          :
Bzn1808 Bo Asomante                     :
Aguada PR 00602                         :
                                        :
Donald W. Lam and Kay Lam               :
3216 Ross Road                          :
Belton, TX  76513                       :
                                        :
Nelson Lopez and                        :
Obed Lopez                              :
HC 05 Box 10806                         :
Moca PR 00676                           :

```
                                                :
Michael Luttrell                                :
12120 Spring Meadow Drive                       :
Chapel Hill, NC  27516                          :
                                                :
Gary Coon                                       :
411 Walnut Street                               :
Apt. 2819                                       :
Green Cove Springs, FL  32043-3443              :
                                                :
                                                :
                                                :
                                                :        COMPLAINT
                              Plaintiffs,        :
                                                :
                                                :
v.                                              :
                                                :
Kingdom of Saudi Arabia                         :
Riyadh, Saudi Arabia                            :
                                                :
and                                             :
                                                :
                                                :
Saudi Arabian National Guard                    :
Riyadh, Saudi Arabia                            :
                              Defendants         :
_____:
```

**COMPLAINT**

Plaintiffs, who bring this action seeking damages for wrongful deaths and

personal injuries as hereinafter set forth, allege as follows, upon information and belief:

1.     On May 12, 2003, Al Qaeda terrorists detonated a massive bomb with

horrific consequences at a facility housing American and other foreign workers, including

Plaintiffs in this action, who were employed by Vinnell Corporation ("Vinnell").  The

Vinnell workers were housed at a Saudi Arabian National Guard ("SANG") compound in

Riyadh, Saudi Arabia ("Vinnell Compound").  The Kingdom of Saudi Arabia ("Saudi

Arabia") and/or SANG owned and controlled the Vinnell Compound and had a duty to maintain security at the compound for the benefit of the Plaintiffs and others.  The terrorist attack on the Vinnell Compound was unchallenged by the woefully inept security provided by the Defendants.  Indeed, the security provided and promised by the Saudi Arabian government or their agents in the United States effected nothing more than an illusion of safety.

2.      The May 12 bombing and resulting injuries were a foreseeable result of the inadequate security provided by the Defendants for the Vinnell Compound in Saudi Arabia.

3.      Plaintiffs are predominately former U.S. military serviceman who were recruited in the United States and employed to train and modernize the SANG.  Plaintiffs were specifically recruited to come to Saudi Arabia to provide commercial services for Saudi Arabia pursuant to a series of contracts between the United States, Saudi Arabia, and Vinnell.

4.      This action arises out of Defendants' failure to warn Plaintiffs during the recruitment process in the United States of the substandard security provisions and practices at the Vinnell Compound and the breaches of Defendants' obligations to protect Plaintiffs.  Despite a history of terrorist attacks against United States citizens in Saudi Arabia, promises and obligations to secure and protect the Vinnell Compound, and numerous, specific warnings of an attack made directly to Crown Prince Abdullah by United States government ("USG") officials preceding the May 12, 2003 Vinnell Compound bombing, and the obligation to protect the Vinnell workers, Defendants negligently failed to provide adequate security for the Vinnell Compound and Plaintiffs

and negligently failed to provide adequate forewarning of the substandard security

provisions at the Vinnell Compound in which Plaintiffs were required to live, which

negligence was a proximate cause of Plaintiffs' deaths and injuries.

## JURISDICTION AND VENUE

5.      Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§

1330(a) and the exceptions to the Foreign Sovereign Immunities Act ("FSIA"), found in

28 U.S.C. § 1605, including §§ 1605(a)(1) and 1605(a)(2).

6.      The recruitment and hiring of the workers who lived in the Vinnell

Compound occurred in the United States and was a commercial activity carried out for

the benefit of Saudi Arabia and the SANG.

7.      Utilizing the Foreign Military Sales Program ("FMS") program, a

contracting mechanism based in the United States, for the purpose of modernizing the

SANG, Saudi Arabia purchased in the United States private commercial services,

including the services of Plaintiffs through their employer, Vinnell.  This is commercial

activity as defined under the FSIA.

8.      Letters of Offer and Acceptance ("LOA") issued under an FMS program,

such as the ones at issue here, include a provision whereby disputes are to be adjudicated

under United States procurement law.  LOAs also include a provision regarding

indemnification and assumption of risk.  Under this provision, Saudi Arabia recognizes

that the USG will procure and furnish the items described in this LOA on a non-profit

basis for the benefit of Saudi Arabia.  Saudi Arabia therefore undertakes to indemnify

and hold the U.S. government, its agents, officers, and employees harmless from any and

all loss or liability (whether in tort or in contract) which might arise in connection with this LOA because of injury or death of personnel of Saudi Arabia or third parties.

9. Federal Acquisition Regulation ("FAR") and Defense Federal Acquisition Regulation Supplement ("DFARS") provisions applicable to U.S. government defense contracts also apply to FMS contracts.

10. Thus, Saudi Arabia's participation in the FMS program for SANG modernization creates an implied waiver of immunity under the FSIA because Saudi Arabia has agreed to adjudicate disputes under U.S. procurement law; under the FARs and DFARs; and to indemnify the USG for a variety of third party claims.

11. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(f)(4).

**THE PARTIES**

12. Plaintiffs are former employees of Vinnell, an American company based in the Commonwealth of Virginia, who were recruited to provide commercial services to Defendants; who were required to live in the Vinnell Compound; and who relied and depended on Defendants for safety and security. Plaintiffs were employed by Vinnell to modernize and upgrade the SANG. Since 2002, Vinnell has been a subsidiary of Northrop Grumman.

13. Plaintiffs were recruited and hired by Defendants' agent, Vinnell, which effectuated the hiring process in its home office in Virginia where recruiting materials were generated. The recruitment was carried out in various venues such as Fort Hood, Texas. However, all contracts were to be signed and returned to Vinnell's home office where final interviews also occurred when possible.

14.     Defendant Saudi Arabia is a foreign state as defined by 28 U.S.C. § 1603. Saudi Arabia contracts with United States corporations, including Vinnell, for the continuing modernization and upgrading of its military forces.  Saudi Arabia was responsible for the security of the Vinnell Compound.

15.     Defendant SANG is a Saudi Arabian military force.  Plaintiffs were employed by Vinnell Corporation to modernize and upgrade the SANG.  The SANG was responsible for the security of the Vinnell Compound.

## FACTUAL ALLEGATIONS

## FOREIGN MILITARY SALES PROGRAM

16.     The FMS program is conducted by the President of the United States and, by designation, the Department of Defense ("DOD"), under the authority of the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 *et seq*.  The FMS program allows the DOD to sell defense articles and services to eligible foreign governments.  It is also a congressionally created regulatory mechanism for United States private commercial sales of defense articles and services to foreign government customers.

17.     The FMS program inserts a governmental regulatory component in what would otherwise be straightforward, private, commercial agreements to sell defense articles and services to foreign governments.

18.     The FMS works as follows: the foreign government utilizes the USG to procure the relevant defense item or service from a defense contractor.  The USG acts as the agent for the buying customer.

19.     The foreign government may choose to rely upon the USG's discretion in selecting a defense contractor to provide the requested items or services. The foreign

government may also play a more active and direct role in such selection, including requesting sole source procurement.

20.    The FMS program allows Saudi Arabia to purchase goods and services from private U.S.-based companies and it utilizes the USG as its agent for that purpose.

21.    In this case, the multi-staged FMS process resulted in both a USG-Saudi Arabia agreement and a USG-Vinnell contract.  Both agreements share the same purpose, to provide Saudi Arabia with the commercial services of Plaintiffs.

22.    The FMS program offers foreign government clients unique advantages over direct contracts with U.S. or foreign contractors.  The FMS program offers foreign government clients the advantage of using DOD's established infrastructure for contract administration and quality control.

23.    The Saudi Arabian decision to use the FMS program to procure the commercial services offered by Vinnell was a commercial decision.

24.    Plaintiffs allege, upon information and belief, that the Defendants directly and affirmatively chose Vinnell to be the contractor for the SANG modernization program.  All negotiations conducted between the USG and Vinnell to create a contract for SANG modernization were conducted at the behest of Saudi Arabia and were at least based in part on Saudi Arabia's course of dealing with Vinnell since 1975.

## SANG MODERNIZATION

25.    In 1973, Saudi Arabia's Crown Prince Abdullah bin Abdul Aziz Al-Saud and the U.S. ambassador signed a memorandum of understanding ("MOU") that established the current security assistance program to modernize the SANG.  The MOU's purpose is to create elements within the SANG to allow it to unilaterally initiate, sustain,

and operate modern military organizations and systems.  The Program Manager, Saudi Arabian National Guard Modernization Program ("OPM-SANG"), is chartered by the Secretary of the U.S. Army as the executive agent for the modernization.  The modernization program is open ended and includes training, supply, maintenance, operations, medical, construction, equipment fielding, equipment post fielding support, and a host of other related commercial acquisition activities provided privately by Vinnell.

26.    The MOU was implemented by a series of subsequent contractual agreements between Saudi Arabia, the USG and Vinnell.

27.    In 1975, Vinnell was awarded the National Guard Modernization Program contract. A recent five-year contract, awarded in 1998, had an estimated value of $831 million.

28.    Vinnell has managed the National Guard Modernization Program contract for thirty years.

29.    Vinnell's website[1] describes the SANG modernization program as follows:

> In 1975, Vinnell embarked on a precedent-setting project for a civilian firm-the training, logistical support, and complete modernization of the Saudi Arabian National Guard (SANG), a full-time military force the size of a small army. Vinnell has managed this program from its inception and has successfully trained thousands of soldiers, noncommissioned officers, and officers in individual, technical, and professional skills.

---

[1] http://www.vinnell.com/militytraining.html (May 9, 2005).

**PLAINTIFFS WERE NOT SUFFICIENTLY WARNED OF THE
SUBSTANDARD SECURITY DURING THEIR RECRUITMENT**

30.    Plaintiffs were required, as a condition of their employment, to live at the quarters provided at the jobsite, the Vinnell Compound.  They could not arm or protect themselves in any manner and depended totally on the SANG for their protection.

31.    The SANG was obligated to protect the Vinnell Compound.  Saudi Arabia and the SANG knew that Plaintiffs were at risk and in a dangerous situation in order to fulfill their contractual obligations to Defendants.  Plaintiffs had no means to protect themselves, as a result of the Kingdom's laws, rules and regulations and Defendants' directions to Vinnell and others throughout the contractual relationship.

32.    Over the thirty years in which Vinnell contracted to provide modernization services to Defendants, the SANG had undertaken to protect the workers at the Vinnell Compound.  Plaintiffs were led to believe by Defendants or their agents in the United States that the security provided would be adequate to protect against foreseeable risks and relied on Defendants' or their agents' conduct and representations.

33.    Plaintiffs were not warned that the premises were not appropriately monitored with security cameras and other devices.

34.    Plaintiffs were not warned that reasonable measures to secure the front gate, so as to prevent it being breached by terrorists, were not taken.

35.    Plaintiffs were not warned that the SANG soldiers and other employees would not be armed and stationed so as to repel an attack.

36.    Plaintiffs were not warned that clear signals of an attack would be ignored, as would suggestions and complaints from persons living in the Vinnell Compound regarding the inadequate security.

37.     Plaintiffs were not warned that reasonable procedures to secure the premises or to immediately follow up when a breach at the front gate occurred did not exist.

38.     Plaintiffs were not warned that reasonable steps were not taken to provide deterrence to potential attackers.

39.     Plaintiffs were not warned that there was no warning system so that when the front gate was breached, appropriate steps could be taken to notify and further protect the residents of the compound.

40.     Plaintiffs were not warned that a reasonable, up to date, safety analysis and risk assessment for the Vinnell Compound had not and would not be performed.

**DEFENDANTS PROVIDED INADEQUATE SECURITY FOR THE VINNELL COMPOUND**

41.     A November 1995 car bomb destroyed a building in the Saudi capital that was headquarters for a U.S. Army training program in which Vinnell was deeply involved.  At least since then, U.S. citizens in Saudi Arabia have been at risk regarding terrorism and security concerns.

42.     The State Department announced on May 1, 2003 that terrorist groups might be in the final phases of planning attacks against U.S. interests in Saudi Arabia.

43.     Security at the Vinnell Compound was not increased before the attack on May 12, 2003.  Defendants failed to perform risk assessments and security analyses of the Vinnell Compound.

44.     Just a day before the deadly assault in the Saudi capital on May 12, 2003, an Al Qaeda operative sent an e-mail to a London-based magazine stating that Al Qaeda had

set up "martyrdom" squads in Saudi Arabia to launch what he described as a "guerrilla war" on Saudi Arabia's leaders and the United States.[2]

45.    A former CIA officer suggested the warnings and threats should have prompted stronger protection at the Vinnell Compound.  "Certainly there is vulnerability when it comes to homicide bombers, but nevertheless these are the people (Vinnell workers) who are training the (Saudi) national guard, and the question is, 'Why wasn't there better security?'" said Vincent Cannistraro, former counterterrorism operations chief at the CIA.[3]

46.    The United States urgently asked Saudi Arabia to bolster security at residential compounds frequented by Westerners throughout the Kingdom on May 1, 2003, just days before the attack, but the Saudi government failed to act, according to Robert Jordan, the U.S. Ambassador to Saudi Arabia.  The U.S. had requested this heightened security due to recent evidence that a major attack on U.S.-based interests on Saudi Arabian soil was imminent.

**THE MAY 12, 2003 BOMBING**

47.    At 11:15 p.m., Al Qaeda suicide bombers leapt from a grey American sedan outside the Vinnell Compound.

48.    They shot and killed the two SANG guards who were "armed" with an empty .50 caliber machine gun.

49.    The bombers then walked through the pedestrian entrance and into the guard booth to open the sliding metal gate to the complex.

---

[2] http://www.foxnews.com/story/0,2933,86818,00.html (May 9, 2005).
[3] http://www.foxnews.com/story/0,2933,86818,00.html (May 9, 2005).

50.     A bomb packed pickup truck sped through the open gate directly to the most populated apartment block in the complex and detonated the bomb at the precise point for maximum impact.

51.     The pickup truck was packed with roughly 400 pounds of the explosive Semtex.

52.     The front of the apartment block was destroyed, as were several offices and housing units nearby.  The blast was felt several kilometers away.

53.     The bombing operation was executed in three minutes.

54.     A detailed map of the compound was discovered in the trunk of the grey American sedan after the bombing.

55.     Speaking in U.S. morning television interviews after the May 12 bombing, Ambassador Jordan asserted that the Saudi government failed to respond quickly to the U.S. request for heightened security, even after evidence accumulated that a major attack was imminent. "They did not, as of the time of this particular tragic event, provide the security that we had requested," Jordan told the CBS broadcast "This Morning".[4]

56.     The Saudi Foreign Minister Prince Saud al-Faisal said 15 Saudi nationals carried out the bombing and admitted there were security lapses.  He said: "The fact that the terrorism happened is an indication of shortcomings and we have to learn from our mistakes to improve our performance in this respect."[5]

57.     Adel al-Jubeir, foreign policy advisor to Saudi Crown Prince Abdullah, acknowledged to a news conference in Riyadh that mistakes by the Saudi Arabian

---

[4] Glenn Kessler, Saudi Security Lax, U.S. Says, Washington Post (May 3, 2003).
[5] http://news.bbc.co.uk/2/hi/middle_east/3027857.stm (May 9, 2005).

government were partly to blame for the successful attack.  "Have we failed?  Yes.  On Monday, we failed.  And we will learn from this mistake."

58.    Defendants engaged in commercial activity in the United States in that it utilized the FMS system for a commercial services procurement.  In addition, Vinnell, Defendants' agent and contractor in the United States, recruited potential employees to work in the Vinnell Compound in Saudi Arabia, for the purpose of training the SANG.  In the course of this recruitment, carried on in locations such as Ft. Hood, Texas, potential employees were induced to come to Saudi Arabia and they were not warned that Defendants had failed to perform up to date risk assessments and security analyses of the Vinnell Compound, or of the general substandard security at the Vinnell Compound, in which they were forced to live.

59.    Nor were Plaintiffs warned that Defendants had not and would not undertake appropriate and reasonable safety procedures as set forth in paragraphs 33-40, supra, and 61, infra.  During their recruitment, Plaintiffs were told they could not arm or protect themselves and it was expressly and/or implicitly promised and agreed that Plaintiffs would be dependent upon the Defendants for their safety.  Defendants owed a duty to warn Plaintiffs of the risks attendant in the modernization program and the nature of security they would provide to Plaintiffs.

60.    This failure to warn the Plaintiffs in the recruitment phase was negligent conduct in the course of commercial activity by Defendants, which negligent conduct continued even after Plaintiffs arrived in Saudi Arabia.  Had Defendants made full and appropriate disclosures to Plaintiffs as set forth herein, Plaintiffs would not have gone to

Saudi Arabia and their lives would have been spared and the catastrophic injuries they suffered would have not have occurred.

61.    Defendants had a duty to use reasonable care to provide security to Plaintiffs, but notwithstanding this duty, negligently failed to provide such security. Such negligence consisted of, but was not limited to:

a.   Failure to monitor the premises with security cameras and other devices;

b.   Failure to take reasonable measures to secure the front gate so as to prevent it being breached by terrorists, as occurred here;

c.   Failure to arm its SANG soldiers and other employees and station them so as to repel an attack, such as the one that occurred;

d.   Failure to take seriously threats of an attack, including suggestions and complaints from persons living in the Vinnell Compound;

e.   Failure to set up reasonable procedures to secure the premises or to immediately follow up when a breach at the front gate occurred, such as the nearby stationing of a quick reaction force;

f.   Failure to take reasonable steps to provide a deterrence to potential attackers;

g.   Ignoring warnings that security measures were inadequate from a variety of sources including the United States embassy;

h.   Failing to provide a warning system so that when the front gate was breached, appropriate steps could be taken to notify and further protect the residents of the compound;

i.   Failure to perform a reasonable, up to date, safety analysis and risk assessment for the Vinnell Compound;

j.   Failure to warn of potential risks during recruitment, as set forth above in

paragraphs 33-40, supra; and;

k.   Defendants were otherwise negligent, in their failure to provide numerous other

elements of basic security to the Vinnell Compound.

**Count I**
**Wrongful Death of Jerry Heroth, Jr.**

62.   Plaintiffs Jerry Heroth, Sr., Kathye Reiss, Kristin Heroth, Jonathan Heroth,

and Jessica Heroth incorporate by reference those facts and allegations set forth in each

of the foregoing paragraphs as if fully set forth herein and further states that as a result of

the aforesaid negligence suffered the following damages:

63.   Plaintiff Kristin Heroth's husband, decedent Jerry Heroth, Jr., was a resident

of the Vinnell Compound and was sitting on his bed, talking to a friend, when the bomb

exploded.  Heroth's friend was decapitated in front of him by a shard of glass from the

explosion.  Heroth suffered serious mental and physical injuries and required

hospitalization.  He incurred medical and other expenses and suffered a loss of earnings

and earning capacity.  He suffered severe Post Traumatic Stress Disorder ("PTSD"),

which ultimately led to his taking his own life. He is survived by his wife Kristin and two

minor children, Jonathan and Jessica. He suffered great emotional and physical pain and

suffering prior to his death.

64.   As a result of the aforesaid negligence, his children suffered mental anguish,

emotional pain and suffering, loss of companionship, comfort, protection, parental care,

attention, advice, counsel, training, guidance and education, as well as the economic

support he would have provided to them and his wife, Kristin.

65.    As a result of the aforesaid negligence Heroth's wife, Kristin Heroth has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her late husband.

66.    **WHEREFORE,** Plaintiffs Jerry Heroth, Sr., individually and as representative of the estate, Kristin Heroth, Jonathan Heroth, and Jessica Heroth demand judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

67.    **WHEREFORE**, As of a result of the aforesaid negligence, Jerry Heroth, Sr., as father of Jerry Heroth, and Kathye Reiss, as mother of Jerry Heroth, suffered the lost of her son, mental anguish, emotional pain and suffering, grief, and the loss of society, companionship, comfort, protection, care, attention, advice, council and guidance she has experienced or will experience in the future.

68.    **WHEREFORE**, Plaintiff Kristin Heroth demands judgment in the amount of $75,000 for loss of consortium.

### Count II
### Wrongful death of James Carpenter II

69.    Plaintiffs Shirley Moore, Billy Allen Russell (Executor) and Deborah Carpenter incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

70.    As a result of the aforesaid negligence Plaintiff Deborah Carpenter's husband, decedent James Carpenter, II, who was a resident of the Vinnell Compound, suffered great fright, pain and suffering and was killed in the explosion. His wife and children will be deprived of a loving father and the income he would have provided to

them over his lifetime.  He is survived by his wife Deborah and his children Jennifer

Carpenter, Brittany Carpenter, Jamie Russell and Brian Washburn.

71.    As a result of the aforesaid negligence, his children suffered mental anguish,

emotional pain and suffering, loss of companionship, comfort, protection, parental care,

attention, advice, counsel, training, guidance and education, as well as the economic

support he would have provided to them and his wife, Deborah.  They may have been

otherwise damaged.

72.    As a result of the aforesaid negligence Plaintiff's wife, Deborah Carpenter

has suffered mental anguish as well as the loss of love, companionship, affection, society

and consortium of her late husband.

73.    **WHEREFORE,** Plaintiffs Billy Allen Russell (Executor) and Deborah

Carpenter (spouse), Jennifer Carpenter, Brittany Carpenter, Jamie Russell and Brian

Washburn demand judgment be entered, jointly and severally, against Defendants in an

amount to be determined by the court, in excess of $75,000.

74.    **WHEREFORE**, As of a result of the aforesaid negligence, Shirley Moore,

as mother of James Carpenter, suffered the lost of her son, mental anguish, emotional

pain and suffering, grief, and the loss of society, companionship, comfort, protection,

care, attention, advice, council and guidance she has experienced or will experience in the

future.

75.    **WHEREFORE**, Plaintiff Deborah Carpenter demands judgment in an

amount to be determined by the court, in excess of $75,000, for loss of consortium.

**Count III**
**Wrongful Death of Quincy Knox**

76.   Plaintiff Mary Knox incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

77.   As a result of the aforesaid negligence, Plaintiff's husband decedent Quincy Knox, who was a resident of the Vinnell Compound, was killed. As a result of the aforesaid negligence, his son Quentin, suffered mental anguish, emotional pain and suffering, loss of companionship, comfort, protection, parental care, attention, advice, counsel, training, guidance and education, as well as the economic support he would have provided to Quentin.  Quentin may have been otherwise damaged.

78.   **WHEREFORE,** Plaintiff Mary Knox, as parent and next friend of Quentin Knox, demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count IV**
**Personal Injuries Suffered by Felix Acevedo**

79.   Plaintiffs Felix Acevedo and Claire Acevedo incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

80.   As a result of the aforesaid negligence, Plaintiff Felix Acevedo sustained serious and permanent injuries, consisting of, but not limited to, multiple fractures and dislocations, lacerations, a brain concussion, burns,  scarring, significant abdominal compartment syndrome, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

81.    As a result of the aforesaid negligence Plaintiff's wife, Plaintiff Claire Acevedo has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her husband.

82.    **WHEREFORE,** Plaintiff Felix Acevedo demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

83.    **Wherefore**, Plaintiff Claire Acevedo demands judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000, for loss of consortium.

**Count V**
**Personal Injuries for James Alford**

84.    Plaintiff James Alford and Katie Alford incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

85.    As a result of the aforesaid negligence, Plaintiff James Alford sustained serious and permanent injuries, consisting of, but not limited to, facial and other lacerations and contusions, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

86.    As a result of the aforesaid negligence Plaintiff's wife, Plaintiff Katie Alford, has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her husband.

87.    **WHEREFORE,** Plaintiff James Alford demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

88.   **WHEREFORE**, Plaintiff Katie Alford demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count VI**
**Personal Injuries to Eric Garza**

89.   Plaintiffs Eric Garza and Mi Chong Garza incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

90.   As a result of the aforesaid negligence, Plaintiff Erick Garza sustained serious and permanent injuries, consisting of, but not limited to, multiple fractures and spine injuries, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

91.   As a result of the aforesaid negligence Plaintiff's wife, Plaintiff Mi Chong Garza, has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her husband.

92.   **WHEREFORE,** Plaintiff Eric Garza demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

93.   **WHEREFORE**, Plaintiff Mi Chong Garza demands that judgment be entered, jointly and severally, against the Defendants in an amount to be determined by the court, in excess of $75,000 for loss of consortium.

**Count VII**
**Personal Injuries to Michael W. Luttrell**

94.    Plaintiff Michael Luttrell incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

95.    As a result of the aforesaid negligence, Plaintiff Michael Lutterell sustained serious and permanent injuries, consisting of, but not limited to serious spinal cord injuries necessitating a spinal fusion, bone grafting and the insertion of metal plates.  He incurred hearing loss and visual disturbances.  He further sustained PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

96.    **WHEREFORE,** Plaintiff Michael Luttrell demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

## Count VIII
## Personal Injuries to Nelson Lopez

97.   Plaintiffs Nelson Lopez and Obed Lopez incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

98.   As a result of the aforesaid negligence, Plaintiff Nelson Lopez sustained serious and permanent injuries, consisting of, but not limited to multiple fractures and contusions, a tympanic membrane rupture, bilateral injuries to his eyes and brain concussion.  He further sustained PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

99.   As a result of the aforesaid negligence Plaintiff's wife, Plaintiff Obed Lopez, has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her husband.

100.  **WHEREFORE,** Plaintiff Nelson Lopez demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

101.  **WHEREFORE**, Plaintiff Obed Lopez demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count IX**
**<u>Personal Injuries to Raphael A. Maldonado</u>**

102.  Plaintiffs Rafael A. Maldonado and Marya Cintron-Maldonado incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

103.  As a result of the aforesaid negligence, Plaintiff Rafael A. Maldonado sustained serious and permanent injuries, consisting of, but not limited to, vestibular organ injury, injury to his eyes, hearing loss, loss of balance, ankle fracture, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

104.  As a result of the aforesaid negligence Plaintiff's wife Marya Cintron-Maldonado has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her husband.

105.  **WHEREFORE,** Plaintiff Rafael A. Maldonado demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

106.  **WHEREFORE,** Plaintiff Marya Cintron-Maldonado demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000 for loss of consortium.

## Count X
## Personal Injuries to Stanley C. Shider

107.  Plaintiffs Stanley Shider and Beverly Shider incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

108.  As a result of the aforesaid negligence, Plaintiff Stanley Shider sustained serious and permanent injuries, consisting of, but not limited to, multiple contusions, lacerations and a brain concussion, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

109.  As a result of the aforesaid negligence Plaintiff's wife, Beverly Shider suffered mental anguish as well as the loss of love, companionship, affection,  society and consortium of her  husband.

110.  **WHEREFORE,** Plaintiff Stanley Shider demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

111.  **WHEREFORE,** Plaintiff Beverly Shider demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

## Count XI
## Personal Injuries to Allen Ceruti

112.  Plaintiff Allen Ceruti incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

113.  As a result of the aforesaid negligence, Plaintiff Allen Ceruti sustained serious and permanent injuries, consisting of, but not limited to, a brain concussion, multiple contusions, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity. He may have been otherwise injured and damaged.

114.  **WHEREFORE,** Plaintiff Allen Ceruti demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

### Count XII
### Personal Injuries to Kenneth Hunley

115.  Plaintiffs Kenneth Hunley and Ruby Hunley incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

116.  As a result of the aforesaid negligence, Plaintiff Kenneth Hunley sustained serious and permanent injuries, consisting of, but not limited to, multiple lacerations and contusions, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

117.  As a result of the aforesaid negligence Plaintiff's wife, Ruby Hunley has suffered mental anguish as well as the loss of love, companionship, affection, society and consortium of her husband.

118.  **WHEREFORE,** Plaintiff Kenneth Hunley demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

119.   **WHEREFORE,** Plaintiff Ruby Hunley demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000 for loss of consortium.

### Count XIII
### Personal Injuries to Donald Lam

120.   Plaintiffs Donald Lam and Kay Lam incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

121.   As a result of the aforesaid negligence, Plaintiff Donald Lam sustained serious and permanent injuries, consisting of, but not limited to, ruptured eardrums, loss of hearing, multiple lacerations and contusions, great pain of body and mind and PTSD. He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.   He may have been otherwise injured and damaged.

122.   As a result of the aforesaid negligence Plaintiff's wife, Kay Lam, has suffered mental anguish as well as the loss of love, companionship, affection,  society and consortium of her  husband.

123.   **WHEREFORE,** Plaintiff Donald Lam demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

124.   **WHEREFORE,** Plaintiff Kay Lam demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000 for loss of consortium.

**Count XIV**
**Personal Injuries of Erick Nelson**

125.  Plaintiff Erick Nelson incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

126.  As a result of the aforesaid negligence, Plaintiff Erick Nelson sustained serious and permanent injuries, consisting of, but not limited to, multiple contusions, bruises and lacerations, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity. He may have been otherwise injured and damaged.

127.  **WHEREFORE,** Plaintiff Erick Nelson demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count XV**
**Personal Injuries for Donald Viner**

128.  Plaintiff Donald Viner incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

129.  As a result of the aforesaid negligence, Plaintiff Donald Viner sustained serious and permanent injuries, consisting of, but not limited to, multiple contusions, lacerations and nerve injuries to his back, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

130.  **WHEREFORE,** Plaintiff Donald Viner demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count XVI**
**Personal Injuries to Terry Young**

131.  Plaintiff Terry Young incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

132.  As a result of the aforesaid negligence, Plaintiff Terry Young sustained serious and permanent injuries, consisting of, but not limited to, multiple contusions, lacerations, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

133.  **WHEREFORE,** Plaintiff Terry Young demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count XVII**
**Personal Injuries to Gary Coon**

134.  Plaintiff Gary Coon incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

135.  As a result of the aforesaid negligence, Plaintiff Gary Coon sustained serious and permanent injuries, consisting of, but not limited to, multiple contusions, lacerations, burns, scarring, nerve damage, great pain of body and mind and PTSD.  He has incurred and will continue to incur medical and other expenses and a loss of earnings and earning capacity.  He may have been otherwise injured and damaged.

136.  **WHEREFORE,** Plaintiff Gary Coon demands that judgment be entered, jointly and severally, against Defendants in an amount to be determined by the court, in excess of $75,000.

**Count XVIII**
**Breach of Contract**

137.  Plaintiffs incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

138.  Plaintiffs, upon information and belief, also claim damages, based upon the injuries as set forth in Counts I – XVII, for Defendants' breach of contractual duties, either express or implied, to provide adequate security for the Vinnell Compound. Plaintiffs were third party beneficiaries of any obligations to secure the compound in the contracts between Vinnell and Saudi Arabia and the USG and Saudi Arabia.  Vinnell has clearly asserted that responsibility for security was the obligation of Defendants[6] and such obligation to provide security was not only imposed by tort law (as hereinbefore set forth) but the clear implication is that it was set forth in contractual obligations as well.

139.  Although Plaintiffs intend to conduct extensive discovery as to the precise language of the contractual obligations, however, the statement by counsel for Vinnell inescapably demonstrates the existence of such a contractual obligation.  The intended beneficiaries of such contractual obligation(s) to provide security were clearly the Plaintiffs.

140.  **WHEREFORE,** each Plaintiff demands that judgment for breach of contract be entered, jointly and severally against the Defendants, for the injuries and damages set forth in Counts I – XVII, supra, in an amount to be determined by the Court in excess of $75,000.

---

[6] In a letter dated August 1, 2003, David Dudley, Vinnell's senior counsel stated to counsel for Plaintiffs that it was Defendants' obligation to protect the Plaintiffs from a terrorist attack.

Respectfully Submitted,


PERLES LAW FIRM, PC
1146 19th Street, NW
Fifth Floor
Washington, DC  20009
Telephone: 202-955-9055
Telefax:    202-955-3806

By:   /s/ *Steve Perles*
  Steven Perles (No. 326975)
  Edward MacAllister


Ronald A. Karp (No. 114249)
Karp, Frosh, Lapidus, Wigodsky &
Norwind, P.A.
1133 Connecticut Ave, N.W.
 Suite 250
Washington, D.C. 114249
Telephone: 301-948-3800


May 10, 2005